# STATE v. ELMER EDWARD BRADY.[1]

May 6, 1955.

No. 36,326.

---

[1]Reported in 70 N. W. (2d) 449.

456

*Alfred J. Weinberg,* for appellant.

*Miles W. Lord,* Attorney General, *Thomas J. Naylor,* County Attorney, and *John T. Naughtin,* Assistant County Attorney, for the State.

THOMAS GALLAGHER, JUSTICE.

Defendant was convicted of criminal negligence under M. S. A. 169.11 in the death of Joseph Thomas Westby, an 8-year-old boy, killed by defendant's car July 19, 1953, at about 8:45 p. m., while riding his bicycle on the north shoulder of highway No. 216 near Hibbing.

Defendant appeals from the denial of his motion for judgment notwithstanding the verdict or for a new trial. He contends that (1) the evidence is insufficient to support the verdict; (2) the court erred in its instructions; and (3) the court erred in admitting opinion evidence of Fred Odegard, acting chief of police of Hibbing, as to the effect the impact would have upon one sleeping on the rear seat of defendant's car.

Joseph Thomas Westby and two other boys were riding their bicycles westerly on the north shoulder of highway No. 216 near Hibbing at the time of the accident. It was twilight, and all the bicycles were equipped with rear reflectors. Joseph was following his two companions when he was struck from behind and killed by a Buick sedan, owned by defendant and in which defendant was then riding.

Defendant does not dispute that it was his car which killed Joseph nor that he was riding in it at the time but contends that he was not its driver. He testified that between 11 p. m. July 18, 1953, and 1 a. m. July 19, 1953, he and his wife, and two other couples had attended a party at the Keewatin Legion Club, where they had indulged in several drinks of whiskey; that when they left, he "was feeling good all right," and had had enough so that he didn't want to drive his car; that at his request, his wife had driven it to their home where it was left while they went in a car of one of their friends to the Veterans' Club at Chisholm, where they remained for about 15 minutes, thereafter stopping at Foley's restaurant; and that after leaving Foley's, they again went to defendant's house,

where all remained until about 5 a. m., at which time the other two couples left.

He further testified that at about 7 a. m. of July 19, 1953, he left his house to drive to downtown Hibbing but changed his plan and instead drove on to Oliver, Wisconsin, approximately 100 miles away, stopping for gas at Cloquet River; that after several drinks of whiskey at Oliver, he left about 2 p. m. to return to Duluth; that at Duluth, he had several drinks of beer at Kyto's Bar, at the 21 Club, and at the Green Parrott; that at the last place, he had engaged in conversation with one of its patrons whom he did not know; that this person offered to drive him to Hibbing and about 5 p. m. they went to defendant's car, where this other person got behind the wheel to drive while defendant removed himself to the back seat, where he fell asleep; that he remained there throughout the entire trip to Hibbing; that the next thing he recalled was the driver awakening him in the rear of the Androy Hotel in Hibbing, after which the driver left and defendant drove his car to his home, where he placed it in the garage; that he has never seen nor heard from the driver since that time.

Testimony otherwise submitted established that defendant did not go to work on the following day but remained at his home; that on that day defendant's wife had heard that the Hibbing police had broadcast the description of a car involved in a fatal accident the day previous; that she had gone to defendant's garage and inspected his car and found its front fender, bumper, and headlight damaged; and that the following day, accompanied by defendant, she had gone to the Hibbing police station and reported this. Thereafter, an inspection readily established that defendant's car was the one involved in the accident. Pieces of glass found at the scene thereof dovetailed into the car's broken headlights, and paint from the Westby boy's bicycle was found on its bumper.

Defendant testified that he had tried to locate the person who drove him from Duluth but that his efforts in this respect had been unavailing; that he had sought corroboration of the fact that he had been at the various bars described in Duluth and Oliver from the

bartenders then on duty there, but none of them recalled him or his presence at any time. The Hibbing police also attempted to locate the alleged driver but likewise met with no success. The only description which defendant could give of him was that he was shorter than defendant, had dark hair, somewhat gray on the sides, wore a brown suit, was hatless, and about 45 years of age. There was no corroboration of defendant's testimony other than as to the time he left and returned to his house and as to his purchase of gas at Cloquet River. Testimony was submitted, though disputed, that he customarily left his car on the street overnight but had driven it into the garage after the accident.

Testimony of Hibbing police was received to the effect that they had examined the scene of the accident shortly after it occurred and that car tracks, skid marks, and scratches then observed on the highway indicated that Joseph was riding on the north shoulder prior to the impact; that the skid marks extended back some 12 feet therefrom; that other marks indicated Joseph's bicycle had been dragged some 76 feet thereafter; and that the car involved did not stop. This was corroborated by Joseph's companions and other witnesses.

Fred Odegard, acting chief of police of Hibbing, called to testify, was asked:

"If those brakes were put on to leave marks such as you saw out there, can you now tell us what would happen to anybody asleep in the back seat, either lying down or sitting up."

Over objection as to foundation and qualification, he answered:

"If you are sitting up, you lunge forward. If you are lying down, you would absolutely roll off of that, be thrown off the seat onto the floor."

As a basis for his qualification to so testify, it was shown that he had been a member of the Hibbing police force for about 33 years; that he had been chief of traffic for the village for about 30 years; that he had attended several sessions of the FBI school in Washington and had worked for the FBI for a short time; that he had investigated numerous accidents; and that he had observed the scene

of this accident, was familiar with the surface of the highway there, and had seen the marks left thereon by the car involved.

■ We believe the evidence as outlined is sufficient to support the verdict. The jury could find therefrom that defendant's car had been traveling at such an excessive rate of speed as to swerve off the highway onto its north shoulder to bring about the collision causing the death of Joseph, and to drag his bicycle some 76 feet thereafter. Such evidence would amply sustain a finding of either recklessness or criminal negligence, as specified in § 169.11, particularly when considered with the evidence as to the skid marks and failure to stop after the accident. See, State v. Bolsinger, 221 Minn. 154, 21 N. W. (2d) 480; State v. Cook, 212 Minn. 495, 4 N. W. (2d) 323. In addition, the jury might determine that at the time the driver was under the influence of intoxicating liquor and in consequence grossly negligent by virtue of this fact alone. State v. Bolsinger, *supra;* State v. Kline, 168 Minn. 263, 209 N. W. 881; see, State v. Cook, *supra.*

■ Defendant contends that, because of the absence of evidence that he was driving at the time of the accident, the verdict cannot stand. The claim thus advanced is in the nature of an alibi and governed by the principles applicable thereto. See, 15 Am. Jur., Criminal Law, § 314; 5 Dunnell, Dig. (3 ed.) § 2448. His admission that it was his car that struck the Westby boy, that he was in it at the time, and that he had been drinking extensively prior thereto; the unlikelihood that he would have entrusted his car to a stranger while he slept therein throughout a trip of substantial distance; his failure to produce the other party or any witnesses that might identify him; his claim that, notwithstanding the sharp application of brakes, the sound and force of the impact, the sudden swerving of the car, the dragging of the bicycle some 76 feet, he remained asleep in the rear seat; the fact that thereafter the car was parked in the garage while on many other occasions it was left on the street; and the fact that he failed to return to work the following day, made the credibility of his alibi a question for the jury. State v. Siebke, 216 Minn. 181, 12 N. W. (2d) 186; State v. Chick, 192 Minn. 539, 257 N. W. 280.

Alibis being easily fabricated are subject to searching scrutiny. State v. Wilson, 238 Minn. 447, 57 N. W. (2d) 412; State v. Duddy, 152 Minn. 179, 188 N. W. 261; State v. Minot, 79 Minn. 118, 81 N. W. 753. Of course, they must be given fair consideration, but the weight to be accorded the evidence submitted to establish them ordinarily is for the jury. State v. Siebke, 216 Minn. 181, 12 N. W. (2d) 186; State v. Chick, 192 Minn. 539, 257 N. W. 280; see, 5 Dunnell, Dig. (3 ed.) § 2448. In the instant case, the jury chose to disbelieve the defendant, and on the evidence presented, we cannot say that it acted arbitrarily or capriciously in this decision.

■ Defendant complains of the trial court's charge that "driving under the influence of liquor could constitute gross negligence," since he contends it unduly emphasized one of the "facets of gross negligence" and authorized the jury to find defendant guilty regardless of the amount of liquor he consumed during the day or whether his driving under its influence was the proximate cause of the accident.

In State v. Bolsinger, 221 Minn. 154, 21 N. W. (2d) 480, we approved the doctrine of Foster v. Redding, 97 Colo. 4, 7, 45 P. (2d) 940, 942, that a person may be wantonly negligent in the operation of a car if sufficiently under the influence of intoxicants to impair his capacity as a driver, even though not intoxicated. In State v. Kline, 168 Minn. 263, 209 N. W. 881, we stated that for an intoxicated person to undertake to drive an automobile on a much-traveled highway is gross or culpable negligence. In State v. Graham, 176 Minn. 164, 222 N. W. 909, we held that the term "under the influence of intoxicating liquor" is so well understood as to require no further definition in a court's charge relative thereto.

Here, evidence submitted by defendant would reasonably support a finding of his intoxication at the time of the accident. The information charged gross negligence, and the court was justified in directing attention to any evidence, including that of intoxication, which would reasonably support this charge. It added the cautionary instructions that the state must prove "beyond a reasonable doubt * * * that at said time and place he [defendant] operated

* * * [his car] recklessly or in a grossly negligent manner; and that the death of Joseph Westby was the proximate result thereof." No exception was taken to any of the instructions nor were any requests made that they be modified or that the terms used therein be further defined. Under these circumstances, we find no error in this portion of the charge. State v. Wilson, 238 Minn. 447, 57 N. W. (2d) 412; State v. Finley, 214 Minn. 228, 8 N. W. (2d) 217.

■ Nor do we feel that this single reference to the use of intoxicants unduly emphasized this element of the case. While the state had not proceeded on the theory outlined, after defendant had injected sufficient evidence to support a finding of intoxication, the court properly pointed out that a finding of driving under the influence of liquor could establish the gross negligence charged. A trial court may indicate that certain evidence is material or tends to prove certain facts when such a comment is fairly made and where, as here, the jury is fully advised as to the state's obligation with respect to burden of proof, as well as to the presumptions favoring a defendant in criminal proceedings. State v. Minneapolis Milk Co. 124 Minn. 34, 144 N. W. 417, 51 L.R.A.(N.S.) 244; State v. Rose, 47 Minn. 47, 49 N. W. 404; State v. Taunt, 16 Minn. 99 (109) ; see, 5 Dunnell, Dig. (3 ed.) § 2479(a),(b). Here, no exception was taken to the remark now challenged nor was any request made for additional definitions or more specific details with reference thereto. See, State v. Graham, *supra*. Under the authorities cited, we find nothing improper in the court's comments on this issue.

■ Defendant asserts that the instructions were insufficient since the court nowhere attempted to define the term "ordinary negligence" as used therein; made no reference to any "reckless" acts which would support the charge; and gave no definition or explanation of "proximate cause." Defendant's counsel had submitted written requests for instructions, practically all of which were given. Nowhere therein did he ask for the instructions which he now asserts should have been added. Neither at the close of the charge nor in his motion for a new trial did he direct attention to any omissions, and no complaints are now made that the instructions given did not clearly and correctly state the fundamental law applicable.

A party may not assign error because of omissions in instructions, which do not go to fundamental law, unless before the jury retires he has directed the court's attention thereto and stated distinctly the basis of his objections. State v. Wilson, *supra;* State v. Finley, *supra.* If more specific detail is desired as to the elements necessary to constitute the offense charged, a request therefor should be made. State v. Graham, *supra;* State v. O'Hagan, 124 Minn. 58, 144 N. W. 410. In the absence of such requests here, the errors assigned cannot be considered.

■ .Defendant claims the court erred in refusing to charge as requested that:

"* * * the State relies on circumstantial evidence to prove the guilt of the Defendant. * * * while the guilt of the Defendant may be established by circumstantial evidence, the circumstances must not only be consistent with guilt and inconsistent with innocence, but when taken together, * * * must be of a conclusive nature, leading to a reasonable and moral certainty that the Defendant and no one else committed the offense charged. If you find one or more of the circumstances that have been proved to be inconsistent with guilt, then a reasonable doubt arises, and your verdict will be not guilty."

The court did charge the jury that:

"* * * the evidence upon which the State is seeking to convict the defendant * * * consists largely of what is known in law as circumstantial evidence. * * * to warrant a conviction upon circumstantial evidence, it is not alone sufficient that said evidence is consistent with the guilt of the accused, or Defendant, but it must exclude every other reasonable hypothesis."

The charge given encompassed the principles governing circumstantial evidence as set forth in defendant's requests. Cf. State v. Kolander, 236 Minn. 209, 52 N. W. (2d) 458; State v. Johnson, 173 Minn. 543, 217 N. W. 683; State v. Gorman, 219 Minn. 162, 17 N. W. (2d) 42. Apparently defendant's counsel was satisfied therewith since he took no exceptions and made no requests that it

be enlarged upon. There is no requirement that an instruction be given in the exact language requested if it correctly sets forth the fundamental principles involved. State v. Pankratz, 238 Minn. 517, 57 N. W. (2d) 635. Since the charge as given correctly applied the applicable doctrine, we find no error in this respect.

■ We feel the court erred in permitting Mr. Odegard to testify as to the physical reactions the car's movement at the time of the accident would produce upon a person asleep on the rear seat thereof. The foundation for this opinion included evidence as to the witness's long experience as a police officer, particularly in connection with traffic matters, as well as to his observation of skid marks some 12 feet in length at the scene of the accident left by the car involved. Based thereon, he expressed the opinion that there had been a "hard" braking action and that thereafter the brakes had been released but conceded his inability to estimate the speed of the car therefrom. Over objection, he was then allowed to express his opinion that the hard application of the brakes and their release after 12 feet would result in the rear seat occupant either lunging forward or, if lying down, being thrown off onto the car floor. Since defendant testified he had slept on the rear seat throughout the entire trip, the conclusion that he would have lunged forward or fallen off the seat so as to awaken of course went directly to the credibility of his alibi.

We do not feel that the possible movements of a rear seat occupant resulting from the "hard" braking action and sudden brake release were properly the subject of expert opinion. There is nothing involved which appears to call for peculiar skill or expert knowledge. The principles of inertia are well known to the average person, and the jurors would be as competent as the witness to arrive at conclusions as to the physical reactions of a rear seat occupant under the circumstances described. In Beckman v. Schroeder, 224 Minn. 370, 384, 28 N. W. (2d) 629, 636, in holding erroneous the admission of similar expert opinion, this court stated:

"* * * here the cause of the Schroeder car being on the south shoulder facing northwest after the accident, the place where the accident happened, and reconstruction of the accident by the use of

miniature cars were matters which were as much within the knowledge of the average juror as that of an opinion witness. No question of science, art, or technical learning was involved. * * *

\* \* \* \* \*

"* * * In our opinion, the jury was as competent to determine where this collision took place as the experts, and the place where this accident occurred is the crucial question in this case. No doubt the official position of these experts carried great weight with the jury in locating the place of the collision in the north lane."

These principles were approved in Woyak v. Konieske, 237 Minn. 213, 54 N. W. (2d) 649, 33 A. L. R. (2d) 1241, although there an opinion of an automobile repairman based upon inspection of photographs of a wrecked car—that the car was not in motion when it was struck—was held not to be within the common knowledge of a juror and hence properly received.

Here the witness's long experience as a police officer was bound to add great weight to his opinion, and its effect upon the jury could have been quite substantial. Because it went to a material and crucial issue, we feel that its reception in evidence constituted error requiring a new trial.

The order appealed from is reversed and a new trial ordered.

Reversed.