NEW HAVEN SAVINGS BANK *v.* VALLEY INVESTORS ET AL.

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and SPEZIALE, Js.

78

Argued October 7—decision released December 20, 1977

*William J. Doyle,* with whom, on the brief, was *Norman Fineberg,* for the appellant (plaintiff).

*Edmund L. Pantani,* for the appellee (defendant Richard R. Splain).

SPEZIALE, J.  The issue here is whether the trial court in a foreclosure action erred in refusing to accept the report of appraisers appointed pursuant to General Statutes § 49-14.[1]

---

[1] "[General Statutes] Sec. 49-14. APPRAISAL OF MORTGAGED PROPERTY AFTER FORECLOSURE. DEFICIENCY JUDGMENT.  Upon the motion of any party to a foreclosure, the court shall appoint three disinterested appraisers, who shall, under oath, within ten days after the time limited for redemption has expired, appraise the mortgaged property and shall make written report of their appraisal to the clerk of the court where such foreclosure was had.  Such report shall be a part of the files of such foreclosure suit, and such appraisal

On January 17, 1975, a judgment of strict foreclosure was rendered against the defendants,[2] and, upon their failure to redeem, the plaintiff took title to the mortgaged property (a forty unit apartment building in West Haven) on June 13, 1975. The plaintiff sought a deficiency judgment and made a timely motion, pursuant to § 49-14, for the appointment of three disinterested appraisers. The appraisers were duly appointed and filed their report within the ten-day time limit. The plaintiff moved for acceptance of the appraisers' report. The defendant Richard R. Splain filed an objection entitled a "remonstrance"[*] to the acceptance of the report, and, after a full hearing, the court sustained the objection and denied the plaintiff's motion to accept the appraisal report.

The remonstrance represented that one of the appraisers, Joseph A. Bishop, "did not personally do a formal evaluation, but relied upon the advice and opinion of other persons not appointed by the court in arriving at a value." The court found that

---

shall be final and conclusive as to the value of such mortgaged property. The mortgage creditor, in any further action upon the mortgage debt, note or obligation, shall recover only the difference between the value of the mortgaged property as fixed by such appraisal and the amount of his claim; and the court in which such action is pending may, if such appraisal and report thereof have been made, render judgment for the plaintiff for the difference between such appraisal and the plaintiff's claim, provided application for such deficiency judgment has been made by the plaintiff within ninety days after the time limited for redemption has expired. In reckoning such period of ninety days, the months of July and August shall be excluded from the computation."

[2] The partnership of Valley Investors, John V. DiBiaso, Michael T. Civitello, and Robert H. Biondi, individually and as partners, and Richard R. Splain were all named as defendants.

[*] Although the proper term is not "remonstrance" but "objection" (P.B. § 360), the former term is employed here because the parties used it.

Bishop had consulted with and was influenced by an outside appraiser, and on this basis concluded that Bishop failed to exercise his own independent judgment in arriving at conclusions of value; it also concluded that the outside consultation constituted a divergence from strict compliance with § 49-14.

The plaintiff claims on appeal that the conclusions of the court are not supported by the facts found and that the actions of appraiser Bishop were proper under General Statutes § 49-14. We agree. The remonstrance should have been overruled and the appraisal report accepted.

As required by the statute, the court appointed "three disinterested appraisers," Louis E. Durocher, George J. Houser, and Joseph A. Bishop. Of the three, two, Bishop and Houser, were nominated by the defendants. In the course of reaching a determination as to the value of the property, Bishop consulted Philip W. Ball, a professional appraiser, and agreed to pay him a fee. Ball indicated to Bishop that he would estimate the value of the property as $450,000. The court found that "Bishop did not accept Mr. Ball's opinion of value in this matter"; also in its finding, however, the court quoted a statement by Bishop that part of the basis for his appraisal was made "purely on the recommendation of Mr. Ball, that he thought it was worth $450,000 . . . ." The plaintiff represents that this latter finding is of doubtful meaning because the court has quoted only part of Bishop's statement, thereby creating the impression that his appraisal was based solely on Ball's recommendation. Bishop's statement, read in full, indicates that the basis for his appraisal was not only Ball's recommenda-

tion, but also a reading of the reports of the other appraisers, and his own experience and knowledge in real estate investment. Upon an examination of the evidence presented, this court may correct any finding to which error has been assigned if the facts have been found in language of doubtful meaning. Practice Book § 627. Such a correction is appropriate in a case such as this, where the language of the finding is such that its real significance does not clearly appear. Practice Book § 628 (b); cf. *Southern New England Contracting Co.* v. *State,* 165 Conn. 644, 653 n.2, 345 A.2d 550 (1974).

Section 49-14 of the General Statutes does not prescribe a particular appraisal procedure. It simply sets forth that "the court shall appoint three disinterested appraisers, who shall, under oath, . . . appraise the mortgaged property and shall make written report of their appraisal to the clerk of the court." Although the three court-appointed appraisers were acting in a quasi-judicial capacity as public agents doing a public duty; *Congress Bank & Trust Co.* v. *Brockett,* 111 Conn. 490, 492, 150 A. 742 (1930); see *Buck* v. *Morris Park, Inc.,* 153 Conn. 290, 292, 216 A.2d 187 (1965), appeal dismissed, 385 U.S. 2, 87 S. Ct. 33, 17 L. Ed. 2d 2;[3] the court did not instruct them to follow any special appraisal procedures, nor did it caution them that outside consultation was improper.

---

[3] The trial court relied on *Buck* as authority for the proposition that § 49-14 appraisers should be distinguished from other appraisers regarding the manner in which they make their appraisals. The dissent adopts the trial court's reasoning. A perusal of *Buck* and the cases cited therein clearly shows that this reliance is misplaced. *Buck* merely states that appraisers, unlike committees or referees, do not hold evidentiary hearings to determine the value of property; rather, they rely on "their own experience and judgment" and set a value on property at their estimate of what it is worth. *Buck* v. *Morris Park, Inc.,* 153 Conn. 290, 292–93, 216 A.2d 187 (1965).

Under the statute, the appraisers "are appointed that they may, in the light of such personal knowledge *as they have or may acquire,* bring to bear upon the matter of value their own judgment." (Emphasis added.) *Equitable Life Assurance Society* v. *Slade,* 122 Conn. 451, 458, 190 A. 616 (1937). It is obvious that the words "may acquire" negate any possible interpretation that the appraisers must act in a vacuum, completely isolated from any outside influences. A reasonable, logical, and natural method for an appraiser to "acquire" personal knowledge is from outside sources, such as texts, public records, and consultations with realtors or professional appraisers. This is the kind of personal knowledge that appraisers, whether they be appointed under § 49-14 or not, may draw upon to "determine the value of property upon their own experience and judgment." *Buck* v. *Morris Park, Inc.,* supra, 293.[4] In fact, the court found that it is common practice for real estate appraisers to consult with other appraisers in arriving at an opinion of value. As noted, personal knowledge may be acquired in a variety of ways, and, among appraisers, outside consultation is considered a helpful source of information. In the absence of controlling language in the statute, or special instructions from the court, the practice and custom of consulting with another appraiser is a legitimate means of acquiring the personal knowledge upon which to base an independent judgment of value.

Bishop personally inspected the property and arrived at his appraisal figure by employing an income approach. There has been no claim raised that Bishop failed to meet with the other appraisers to discuss the valuation opinion, or that any of the

---

[4] See footnote 3.

appraisers was denied the opportunity to partici-
pate fully at the valuation meeting. See *Congress
Bank & Trust Co.* v. *Brockett,* supra, 492–93.

The facts show that Bishop inspected the prop-
erty, reached a conclusion as to value, and was one
of two appraisers to agree on a figure of $470,000.
When an objection to an appraisal is filed, the
inquiry of the court is limited to claimed errors of
law. *Connecticut Savings Bank* v. *Hanoman Realty
Corporation,* 168 Conn. 554, 558, 362 A.2d 827
(1975); *Equitable Life Assurance Society* v. *Slade,*
supra, 456. The facts as found do not support the
conclusions of the court that Bishop failed to exer-
cise his own independent judgment in arriving at
conclusions of value for the court, that the appraisal
report was not the joint act of all three appraisers
bringing to bear upon the problem the individual
knowledge and judgment of each appraiser, or that
the actions of appraiser Bishop in consulting with
a fourth appraiser constituted a divergence from
strict compliance with § 49-14 of the General Stat-
utes. Because there was no error of law in the
appraisal report, it should have been accepted.

Only brief comment need be made on the defend-
ant Splain's tardy constitutional attack on the stat-
ute. The constitutionality of General Statutes
§ 49-14 was first challenged by that defendant in the
appeal to this court. The issue was initially raised
by the trial court in its memorandum of decision.
Having sustained the objection to the appraisers'
report on other grounds, the court ventured the
opinion that the statute was constitutionally defec-
tive. Generally, issues not raised in the trial court
will not be considered on appeal. Practice Book
§ 652; *Silverman* v. *St. Joseph's Hospital,* 168 Conn.
160, 176, 363 A.2d 22 (1975); *Pizzola* v. *Planning &*

*Zoning Commission,* 167 Conn. 202, 209, 355 A.2d 21 (1974). This rule is applicable even when the constitutionality of a statute is being challenged. *Morris* v. *Timenterial, Inc.,* 168 Conn. 41, 43, 357 A.2d 507 (1975); *Pizzola* v. *Planning & Zoning Commission,* supra.

There is nothing in the circumstances of this case which would justify an exception to the rule. "Only in most exceptional circumstances can and will this court consider a claim, constitutional or otherwise, that has not been raised and decided in the trial court." *State* v. *Evans,* 165 Conn. 61, 69, 327 A.2d 576 (1973). Since no new, unforeseeable, constitutional right has arisen since the trial, and the record does not indicate a clear deprivation of a fundamental constitutional right and a fair trial, this claim need not be considered. Id., 69–70. Moreover, the fact that the defendant Splain has introduced the issue as an afterthought in a terse statement in his brief[5] is in itself sufficient reason for deferring any consideration of the constitutionality of the statute.

The judgment of the trial court is reversed and the case is remanded with instructions to accept the appraisers' report and grant the plaintiff's motion for a deficiency judgment.

In this opinion HOUSE, C. J., LOISELLE and LONGO, Js., concurred.

---

[5] The full text of the defendant Splain's argument on this issue is set forth here: "The Statute In Question Is Unconstitutional, As The Taking Of The Defendant's Property Is At Issue And He Has No Opportunity To Submit Evidence Or To Otherwise Be Heard As To Value Prior To Potential Assessing Of A Deficiency Judgment. Contrary to any statements or holdings in *Buck* v. *Morris,* it is suggested that the more recent decisions of the Supreme Court of the United States are controlling as noted in the court's Memorandum of Decision below. The present case should be decided on this issue alone in fairness to all litigants of this State."

Bogdanski, J. (dissenting). The trial court properly applied the law to the facts when it concluded (1) that "[a]ppraiser Bishop was influenced in his decision by Mr. Ball"; (2) that "appraiser Bishop failed to use his own experience" and "his own judgment in determining the value of the subject property"; and (3) that "Mr. Bishop delegated a part of his authority as court-appointed appraiser to Mr. Ball and agreed to pay Mr. Ball a fee for doing so." Those conclusions are fully supported by the finding[1] and the appendices[2] to the briefs.

[1] "Mr. Bishop felt the need of help from Mr. Ball and agreed to pay him a fee. Mr. Ball recommended to appraiser Bishop that the subject premises were worth $450,000. It is admitted by Mr. Bishop that the advice of Mr. Ball influenced the ultimate decision rendered by Mr. Bishop. It is stated by Mr. Bishop that part of the basis for his appraisal was made 'purely on the recommendation of Mr. Ball, that he thought it was worth $450,000.' "

[2] "Joseph A. Bishop testified, when asked whether there was some reason why he was not sure of himself in doing an appraisal in the subject premises, as follows: 'I felt the need of help, yes.' When asked why, Mr. Bishop responded: 'Well, because I hadn't done anything of that nature in years. And I had just started in a new association with Philip Ball who is a professional appraiser. And I made an arrangement with him prior to this on another occasion where we appraised a building. And I felt that I needed his advice.' When asked whether he agreed to pay Mr. Ball a fee for his advice, Mr. Bishop responded: 'Correct.' When asked who did this appraisal work, Mr. Bishop responded: 'I went there to the building twice with Mr. Ball.' When asked what function Mr. Ball served in assisting him, Mr. Bishop responded: 'I took Mr. Ball out there and we viewed the premises together. Subsequent to that, I talked with him on four or five occasions. And his recommendation to me was that he didn't think the building was worth much more than $450,000. Now, he is a professional appraiser and that is the advice I got from him.' When asked if he was an appraiser of real estate, Mr. Bishop responded: 'I do appraisal work, yes. I am not considered a professional appraiser.' "

Philip William Ball, called by the plaintiff, the New Haven Savings Bank, testified on cross-examination: "When asked if he had a fee arrangement with Mr. Bishop on this particular appraisal, Mr. Ball responded: 'Yes, sir.' "

Section 49-14 requires that appraisers appointed by the court for the purpose of a deficiency judgment shall make a written report of their appraisal to the court and that "such appraisal shall be final and conclusive as to the value of such mortgaged property." The statute makes no provision for the mortgagor against whom a deficiency judgment is sought to receive notice of or an opportunity to be heard at the meeting of the appraisers. It is at that meeting that the appraisal is determined, and thereafter it is reported to the court.

Our law requires that such appraisers, appointed pursuant to the provisions of § 49-14, "determine the value of property upon their own experience and judgment." *Buck* v. *Morris Park, Inc.,* 153 Conn. 290, 293, 216 A.2d 187, appeal dismissed, 385 U.S. 2, 87 S. Ct. 33, 17 L. Ed. 2d 2; *Connecticut Savings Bank* v. *Hanoman Realty Corporation,* 168 Conn. 554, 558, 362 A.2d 827.

In the *Buck* case, decided in 1965, this court was confronted with the claim that the procedure set forth in § 49-14 was unconstitutional in that it made no provision for notice of the meeting of the appraisers to be given the mortgagor so that he might introduce evidence and be heard on the question of value, thus depriving the mortgagor of his property without due process of law in violation of the federal and state constitutions. In rejecting that constitutional claim, the court placed much emphasis on the fact that the appraisers *must* determine the value of the property on their own experience and judgment and, "[c]onsequently, they are not required to hear evidence or to give notice of the meeting at which they make the appraisal." *Buck* v. *Morris Park, Inc.,* supra, 293; *Vincent* v. *German Ins. Co.,* 120 Iowa 272, 278, 94 N.W. 458.

After a hearing on the remonstrance filed by the mortgagor to the appraisers' report, the trial court ruled that appraiser Bishop did not "determine the value of the property upon his own experience and judgment" and sustained the remonstrance.

My colleagues, however, have concluded that Bishop did ultimately give his opinion as to value and that whether that opinion was influenced by a third party not appointed as an appraiser by the court is of no consequence since such outside influence on an appraiser's opinion is common in the appraisal field.

The flaw in that reasoning is that court-appointed appraisers under § 49-14 cannot be equated with ordinary real estate appraisers. Appraisers appointed pursuant to § 49-14 partake of a special quasi-judicial nature. *Buck* v. *Morris Park, Inc.,* supra, 292. They are appointed to make an appraisal that is binding and conclusive on the court and on the parties. They do not take the witness stand, do not give testimony and are not subject to cross-examination. They are, in fact, appointed officers who, in an ex parte proceeding attended only by themselves, determine value from which no right of appeal lies.

The traditional real estate appraiser, on the other hand, is generally a witness in a court proceeding whose testimony is subject to cross-examination and whose opinion may be rejected in whole or in part by the court. Moreover, it is the court which makes the ultimate determination of value from which judgment a right of appeal lies.

In essence, appraisers under § 49-14 can be equated to a jury of three which, after deliberating, return a verdict to the court as to value. Like any

other such deliberative body, the opinions of the individual members are subject to being influenced by the opinions of their fellow jurors but cannot be so influenced by anyone not a member of the deliberative body, nor by any other outside influence. Unlike the verdict of a jury, however, the appraisal is not subject to any review by the trial court, nor to an appeal.

There is then no basis for equating the two types of appraisers. While it is true that the ordinary real estate appraiser can express an opinion as to value regardless of its source, that opinion is not binding on the court and is subject to the safeguards of a judicial hearing. The determination of value by appraisers under § 49-14, however, amounts to a conclusive judgment which is subject to none of the safeguards of a judicial hearing. The latter procedure is permitted only because our law requires that such appraisers determine the value of property upon their own experience and upon their own independent judgment. Otherwise, the procedure under § 49-14 would be in violation of the fourteenth amendment to the constitution of the United States. See *Roundhouse Construction Corporation* v. *Telesco Masons Supplies Co.*, 168 Conn. 371, 362 A.2d 778.

I would, therefore, find no error and would uphold the action of the trial court in sustaining the remonstrance to the report of the appraisers.