STATE OF CONNECTICUT *v.* LINWOOD H. BRIGGS

COTTER, C. J., LOISELLE, BOGDANSKI, PETERS and HEALEY, Js.

---

Argued October 3—decision released December 18, 1979

*Suzanne Z. Gottlieb,* assistant public defender, for the appellant (defendant).

*Richard F. Jacobson,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Domenick Galluzzo,* assistant state's attorney, for the appellee (state).

COTTER, C. J. The defendant was convicted after a trial to a jury of kidnapping in the second degree in violation of General Statutes § 53a-94 (a), sexual assault in the first degree in violation of General Statutes § 53a-70 (a), and two counts of

public indecency in violation of General Statutes § 53a-186 (a) (2). From the judgment rendered on the verdict he has appealed.

From the evidence the jury could have found the following facts: On the morning of June 8, 1977, the defendant was standing next to a borrowed green car that was parked with its hood up, apparently disabled, on the grassy area adjoining the entrance ramp to the Merritt Parkway in Trumbull. At approximately 9 a.m. that day, on two separate occasions, the defendant stepped out from in front of the green car and exposed himself to the women drivers of two cars as they were passing the defendant while proceeding down the entrance ramp. Shortly after those two cars had passed, a third woman driver entered the same entrance ramp, also at approximately 9 a.m., noticed the green car with its hood up and observed the defendant, who was no longer exposing himself, waving to her apparently in an effort to get assistance. She stopped her car and offered to give him a ride to a gas station. After getting in the car, he grabbed her arm and acted in an obscene manner. The driver said that she was going to stop the car to put him out and he said no. When they got to the exit, the defendant forcibly pulled the woman operator over to the passenger's seat and took her position behind the wheel, covered her mouth with her hand and told her not to scream. Then he drove several miles, finally parking the automobile near a secluded wooded area. Briggs forcibly pulled the victim out of the car, took her into the wooded area several feet from the automobile and forced her to have sexual intercourse with him. Thereafter he grabbed her purse looking for identification and found her address on her driver's license. Briggs drove her

back to his car where he got out and told her to leave. He also told her that her address was easy to remember and that she should not tell anyone about what had occurred or something would happen to her.

The defendant's first claim of error relates to the testimony adduced by the state on the cross-examination of Christine Briggs, the defendant's common-law wife, who was the defendant's principal alibi witness. On direct examination, Christine Briggs testified that on June 8, 1977, she, the defendant, and his nephew arrived at the Gary Crooks Center in Bridgeport at approximately 9:05 a.m. in order to obtain food stamps, and afterwards they drove to Stamford, arriving there at 10:15 in the morning. On cross-examination, the state questioned her regarding the purpose in going to Stamford. The witness testified that they had gone to a courthouse in Stamford because the defendant had an appointment there. When asked the reason for the appointment, the witness was allowed to testify, over the defendant's objection, that the appointment was in connection with a disorderly conduct charge that had been lodged against the defendant.

The defendant now argues on appeal that his common-law wife's testimony on cross-examination regarding his prior misconduct was inadmissible because it could not have been used to impeach his testimony since he had not yet testified and the evidence could not come within any of the other recognized exceptions to the general rule that evidence of the defendant's character is inadmissible. See *State* v. *Barlow*, 177 Conn. 391, 393, 418 A.2d 46; *State* v. *Zdanis*, 173 Conn. 189, 377 A.2d 275; *State* v. *Carr*, 172 Conn. 458, 374 A.2d 1107. The tran-

script discloses, however, that the defendant failed to make this claim as the basis for his objection at trial. Rather, he stated at trial that the evidence was irrelevant. Any appeal will be limited to the ground asserted once counsel states the authority and ground of his objection. *State* v. *Adams,* 176 Conn. 138, 406 A.2d 1; *State* v. *Rado,* 172 Conn. 74, 372 A.2d 159; *State* v. *Johnson,* 166 Conn. 439, 352 A.2d 294; *Borucki* v. *MacKenzie Bros. Co.,* 125 Conn. 92, 3 A.2d 224. This court can and will consider a claim, constitutional or otherwise, that has not been raised and decided in the trial court only in the most exceptional circumstances. *State* v. *Rogers,* 177 Conn. 379, 418 A.2d 50; *State* v. *Adams,* supra; *New Haven Savings Bank* v. *Valley Investors,* 174 Conn. 77, 384 A.2d 321; *State* v. *Evans,* 165 Conn. 61, 69, 327 A.2d 576. Despite the defendant's claims to the contrary, the record does not indicate that the defendant was "clearly deprived of a fundamental constitutional right or a fair trial" as required by *Evans.* The only issue concerning the wife's testimony is whether the trial court was correct in ruling that the evidence was relevant.

No precise or universal test of relevancy is furnished by the law and if evidence adduced on cross-examination conduces in any reasonable degree to establish the probability or improbability of the fact in controversy, it should be admitted. *Delmore* v. *Polinsky,* 132 Conn. 28, 31, 42 A.2d 349; *Plumb* v. *Curtis,* 66 Conn. 154, 166, 33 A. 998. Evidence is relevant if it has any tendency in reason to prove or disprove any disputed fact that is of consequence to a determination of the matter in issue. *People* v. *Hill,* 19 Cal. App. 3d 306, 319, 96 Cal. Rptr. 813. The trial court has broad discretion in deciding the rele-

vancy of evidence as it pertains to cross-examination and on appeal the appellant has the burden of establishing that there has been an erroneous ruling which was probably harmful to him. *State* v. *Jones,* 167 Conn. 228, 232, 233, 355 A.2d 95. The scope of cross-examination in a criminal trial is a matter properly left to the sound discretion of the trial court; *United States* v. *Evanchik,* 413 F.2d 950 (2d Cir.) ; and as a rule although the extent of cross-examination is within the trial court's discretion it should be liberally allowed. *State* v. *Reed,* 174 Conn. 287, 299, 386 A.2d 243. Every reasonable presumption should be given in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion. Reversal is required only where an injustice appears to have occurred. *State* v. *Martin,* 170 Conn. 161, 365 A.2d 104; *State* v. *Brown,* 169 Conn. 692, 702, 364 A.2d 186. The questions asked by the state on the cross-examination of Christine Briggs were clearly aimed at testing her memory, recollection and credibility. *Hirsch* v. *Vegiard,* 137 Conn. 302, 304, 77 A.2d 85. Where a defendant proposes an alibi as his defense, one permissible method of determining whether the alibi was fabricated is to inquire into the specific details and the surrounding circumstances of the alibi on cross-examination in an attempt to show inconsistencies in the testimony of the various alibi witnesses, since the claim of alibi is subject to searching scrutiny. *State* v. *Brady,* 244 Minn. 455, 461, 70 N.W.2d 449. To the extent that the evidence tended to prejudice the defendant, it was for the trial court, in the exercise of judicial discretion, to decide whether the probative value of the testimony outweighed the prejudice likely to result from its admission. *State* v. *Turcio,* 178 Conn. 116, 129, 422

A.2d 749. In light of the necessity of vigorous cross-examination of an alibi witness, we cannot say that the trial court abused its discretion.

The defendant's principal contention in this appeal is that the trial court erred in permitting the prosecutor to inquire into the circumstances of the defendant's silence subsequent to his arrest. See *Doyle* v. *Ohio,* 426 U.S. 610, 96 S. Ct. 2240, 49 L. Ed. 2d 91; *State* v. *Cook,* 174 Conn. 73, 381 A.2d 563. Questioning as to the defendant's silence was permitted during the state's cross-examination of the defendant[1] and in the course of the direct examination of the state's rebuttal witness, Officer Michael Savino.[2]

---

[1] "Q. Did you ever recall telling the police officer that you had gone to court in Stamford on June 8th?

A. Yes.

Q. You told him that?

A. Yes, I did.

Q. Did you ever tell the police officer on June 15th that you were home from 6:45 to 8:55 in the morning?

Mr. Spear [E. Eugene Spear, defense counsel]: Objection, Your Honor. Outside the scope, and if there is any so-called statements to police officers, it was never revealed to us under our motion. I ask it be excluded.

[Objection was overruled and exception was taken.]

A. No, I never told them nothing. Not anything.

Q. Did you tell them that you were wearing red pants, red T-shirt and blue jacket, white, red and blue sneakers, at 6:15 on June—

A. I did not tell the police officer nothing.

Q. Did you ever tell them that you went to court with your wife and Kareen?

A. Pardon me?

Q. Did you ever tell them that you went to court with your wife and Kareen—the boy?

A. Well, I started—I almost started a conversation but I cut it.

Q. Did you ever tell the police officer what time you arrived at the court in Stamford?

A. I did not tell the police officer nothing."

[2] "Q. And after you advised him of his rights, did he give you any information with respect to his whereabouts on June 8th of 1977?

As a preliminary matter, it should be noted that the defendant's assertion of a violation of a constitutional right was not properly preserved for appeal. The record, however, adequately supports a claim that the defendant was deprived of a fundamental constitutional right so that his claims of error, albeit raised for the first time on appeal, will be reviewed. *State* v. *Zeko,* 177 Conn. 545, 418 A.2d 917; *State* v. *Cook,* supra; *State* v. *Evans,* supra.

It has long been recognized that when an accused is in custody, "our law accords him the right to reply to question or statement, or to remain silent. His silence under such circumstances cannot be laid in evidence against him." *State* v. *Ferrone,* 97 Conn.

A. The only information he would tell us was that he was in court on June 8th.

Q. Did he tell you what time he was in court?

A. No, he didn't.

Q. Did he tell you what judge—

Mr. Spear [E. Eugene Spear, defense counsel]: Objection, Your Honor. That's not rebuttal. Mr. Briggs said he didn't tell, his words were, I didn't tell nothing, except he was in court. That's not rebuttal evidence.

Mr. Galluzzo [Domenick Galluzzo, for the state]: I want to ask him what time he arrived in court.

The Court: I'll allow that.

Mr. Spear: The officer said he didn't tell him.

Mr. Galluzzo: So I'm asking. I didn't get the answer.

[Objection was overruled and no exception was taken.]

By The Court:

Q. What time did he said he arrived in court?

A. He didn't tell me.

By Mr. Galluzzo:

Q. Did you ask him?

A. Yes.

[A short time later.]

Q. Is there anything in your report with respect to the conversation you had with her or with Mr. Briggs?

A. Yes, there is.

Q. And may I see that, please?

A. This is the accused, and what he said. Refused to give a statement."

258, 266, 116 A. 336; *State* v. *Cook,* supra; 3 Wharton, Criminal Evidence (13th Ed.) § 703. This mandate was raised to a constitutional requirement in *Doyle* v. *Ohio,* supra, where the United States Supreme Court held that the defendant's post-*Miranda* warning silence may not constitutionally be used by the prosecution either for substantive or impeachment purposes. Thus, the trial court erred in allowing the prosecution to develop testimony regarding the defendant's silence after he had been given the *Miranda* warning. *State* v. *Cook,* supra; *State* v. *Ralls,* 167 Conn. 408, 356 A.2d 147. This does not conclude the issue, for the United States Supreme Court recognized in *Doyle* v. *Ohio,* supra, that in certain circumstances, such a violation may be harmless error not warranting reversal. See also *State* v. *Zeko,* supra, in which a unanimous court also recognized the applicability of the doctrine of harmless error in circumstances such as those existing in the present case.

In *Zeko,* we reviewed federal court decisions and adopted the standards enunciated therein for the proper determination of harmless error under circumstances similar to the present case. "Those courts have applied the rule that '[w]hen there is but a single reference at trial to the fact of defendant's silence, the reference is neither repeated nor linked with defendant's exculpatory story, and the exculpatory story is transparently frivolous and evidence of guilt is otherwise overwhelming, the reference to defendant's silence constitutes harmless error.' *Chapman* v. *United States,* 547 F.2d 1240, 1250 (5th Cir.), cert. denied, 431 U.S. 908, 97 S. Ct. 1705, 52 L. Ed. 2d 393 (1977); *Leake* v. *Cox,* 432 F.2d 982, 984 (4th Cir. 1970). The rule has similarly been applied where a prosecutor does not

focus upon or highlight the defendant's silence in his cross-examination and closing remarks and where the prosecutor's comments do not strike at the 'jugular' of the defendant's story. *United States* v. *Davis* [546 F.2d 583, 594 (5th Cir. 1977)]; see *United States* v. *Harp,* 536 F.2d 601, 603 (5th Cir. 1976.)" *State* v. *Zeko,* supra, 555.

When viewed in relation to the trial in its entirety, which involved eleven witnesses over a period of several days, the defendant's silence was not so "highlighted" by the prosecutor as to constitute prejudicial error. See *State* v. *Zeko,* supra. Nor can it be said that the comments "struck at the jugular" of the defendant's defense. The defendant was identified by three independent witnesses as present on the side of the entrance ramp on the morning in question. The victim had ample opportunity to become familiar with the defendant's facial features and positively identified him from an array of photographs and once again in court. In attempting to establish his alibi, the defendant offered the testimony of only three witnesses, all having a clear bias in his favor. Furthermore, the record does not indicate, and the defendant does not claim, that the prosecutor made reference to the defendant's silence in his closing remarks to the jury nor was there any suggestion to the jury that they draw an inference of guilt from the defendant's silence. See *State* v. *Zeko,* supra. This court continues to recognize, as stated in *Zeko* (p. 558), that the "infusion of 'harmlessness' into error must be the exception." Under the facts of this case, however, we find that the error in allowing testimony regarding the defendant's post-*Miranda* warning silence was harmless beyond a reasonable doubt.

Lastly, the defendant claims error in the denial by the trial court of the defendant's motion for acquittal on the charge of kidnapping in the second degree.[3] The defendant urges us to adopt the merger doctrine of *People* v. *Levy,* 15 N.Y.2d 159, 256 N.Y.S.2d 793, cert. denied, 381 U.S. 938, 85 S. Ct. 1770, 14 L. Ed. 2d 701, and its progeny[4] which would preclude the prosecution for a kidnapping which is "merely incidental" to the sexual assault. Recognizing that this court has not accepted the merger doctrine in *State* v. *Chetcuti,* 173 Conn. 165, 377 A.2d 263, the defendant attempts to distinguish that case from the present one so that we may reconsider the merger doctrine. The basis of the distinction is that in *Chetcuti* the defendant was convicted of kidnapping in the first degree, whereas in the present case the defendant was convicted in the second degree. We find no merit in this distinction. This court recently considered the defendant's argument in *State* v. *Lee,* 177 Conn. 335, 417 A.2d 354 and *State* v. *DeWitt,* 177 Conn. 637, 419 A.2d 861 where we held that the defendant may be convicted of kidnapping in the second degree in addition to a conviction for robbery even though the con-

---

[3] Kidnapping in the second degree is defined as the restraint of another person with intent to prevent his liberation by either (a) secreting or holding him in a place where he is not likely to be found or (b) using or threatening to use physical force or intimidation. Sections 53a-94 (a) and 53a-91 (2) of the General Statutes. Section 53a-91 (1) of the General Statutes defines "restrain" as "to restrict a person's movements intentionally and unlawfully in such a manner as to interfere substantially with his liberty by moving him from one place to another, or by confining him either in the place where the restriction commences or in a place to which he has been moved, without consent."

[4] *People* v. *Cassidy,* 40 N.Y.2d 763, 390 N.Y.S.2d 45; *People* v. *Lombardi,* 20 N.Y.2d 266, 282 N.Y.S.2d 519; see also 43 A.L.R.3d 699 for a discussion of the relationship of kidnapping to other crimes.

victions grew out of the same conduct as long as the state was able to prove, beyond a reasonable doubt, all of the essential elements of each crime. "[W]here the elements of two or more distinct offenses are combined in the same act, prosecution for one will not bar prosecution for the other. *State v. Dubina,* 164 Conn. 95, 100, 318 A.2d 95; *State v. Fico,* 147 Conn. 426, 430, 162 A.2d 697." *State v. Chetcuti,* supra, 169. Where the intent required to constitute a kidnapping in the second degree is present, "the fact that the perpetrator's underlying motive for the detention is the consummation of another crime . . . does not preclude a conviction for kidnapping." *State v. Lee,* supra, 334.

Whether in a given case the essential elements of a kidnapping are proven beyond a reasonable doubt is a question for the jury. *State v. Lee,* supra; *State v. Chetcuti,* supra. In the present case although the defendant was initially invited into the victim's car, he thereafter forcibly took control of the automobile and drove several miles, forcibly pulled the victim from the car and into the wooded area, and forced her to have sexual intercourse with him. On these facts, the jury could reasonably have concluded that the victim was restrained and that the restraint was accompanied by the intent required to constitute kidnapping in the second degree.

There is no error.

In this opinion LOISELLE, PETERS and HEALEY, Js., concurred.

BOGDANSKI, J. (dissenting). The United States Supreme Court in *Doyle v. Ohio,* 426 U.S. 610, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976), held that the due process clause of the fourteenth amendment forbids

the use of evidence of a defendant's post-arrest, post-*Miranda* warnings silence by the prosecution for impeachment purposes. The basis for that decision is twofold. First, "every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested." Id., 617. And secondly, in view of the implicit assurance inherent in the *Miranda* warnings that silence will carry no penalty, "it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." Id., 618.

This court applied *Doyle* in *State* v. *Cook,* 174 Conn. 73, 381 A.2d 563 (1977), and ordered a new trial because "[o]n cross-examination, the state's attorney asked the defendant why he had not furnished the state with his alibi at the time of his arrest or thereafter." Id., 75. Those same circumstances exist in the present case and the result should be the same.

To comprehend the propriety of the harmless error rule with respect to a violation of constitutional dimensions, reference must be made to Mr. Justice White's concurrence in *United States* v. *Hale,* 422 U.S. 171, 182, 95 S. Ct. 2133, 45 L. Ed. 2d 99 (1975). Mr. Justice White noted that when a person under arrest is informed of his rights as *Miranda* requires, "it does not comport with due process to permit the prosecution during the trial to call attention to his silence at the time of arrest and to insist that because he did not speak about the facts of the case at that time, as he was told he need not do, an unfavorable inference might be drawn as to the truth of his trial testimony. Id., 182–83.

It is axiomatic that when dealing with an intrusion into the constitutional rights of an accused, "the accused is not required to show that the constitutional error was harmful; rather, the state must show that it was harmless beyond a reasonable doubt." *Aillon* v. *State,* 173 Conn. 334, 339, 377 A.2d 1087 (1977); *Chapman* v. *California,* 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). Indeed, for the state to eliminate such a possibility is not an easy task.

This case presents a situation clearly requiring a finding of reversible error. The alibi defense proffered by the defendant was undeniably assailed by the prosecutor's repeated, impermissible references to the silence of the defendant. The harmful, cumulative effect of these references by the prosecutor is incalculable.[1] The references to the defendant's silence went to the heart of the defense; the implication was that the defense was fabricated. The references were hardly brief or isolated and the likelihood of prejudice may well assume the status of certainty.

Surely the state was aware of the defendant's silence subsequent to his arrest and knew very well what the defendant's answers on cross-examination would be, as well as the answers of its own witness,

---

[1] It was the contention of the defense that the defendant was in the company of his wife and was nowhere near the scene of the alleged crimes. This alibi was initially asserted by Christine Briggs and corroborated by the defendant when he testified. The state, however, sought to impeach this testimony as to why subsequent to his arrest he had not provided the police with information of his whereabouts on June 8, 1977. The prosecutor posed eight questions to the defendant, all of which were directed towards what he said after his arrest. The essence of the defendant's response to all of those questions was that he remained silent, asserting his privilege under the fifth amendment.

Officer Michael Savino, on direct examination. As noted in *United States* v. *Impson,* 531 F.2d 274, 278 (5th Cir. 1976), "[t]he logical conclusion is that [the prosecutor's] only purpose in putting the question was to bring before the jury the fact of the defendant's silence." The prosecution's questions were directed at exposing the defendant's silence for the purpose of casting doubt on his defense. Such conduct has been held to be contrary to the maintenance of a sound judicial process. See *People* v. *Norris,* 74 Mich. App. 361, 367, 253 N.W.2d 767 (1977).

The continued expansion of the harmless error rule will encourage prosecutors to get such evidence in, since they know that if they have a strong case such testimony will not be considered to be reversible error. See *People* v. *Jablonski,* 38 Mich. App. 33, 39, 195 N.W.2d 777 (1972).

I therefore dissent and would order a new trial.