[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM RE PREJUDGMENT REMEDY
This is a motion for a prejudgment remedy by the plaintiff R S Hems Inc. For the purposes of this hearing the parties have stipulated that the plaintiff is a holder of two notes in the original face value of $169,000 and $29,000. CT Page 3720 Both these notes were signed, acknowledging evidence of indebtedness, by the defendants. There has not been payment on the notes. The notes are collateralized by a security agreement; the collateral was the assets of the business Fire Defense Centers. It was income in connection with the purchase of this business that the defendant gave the aforementioned notes to the plaintiff with the security interest in the business.
The plaintiff has moved the court for an order allowing it to attach as well as disclose real and personal property of the defendants. The issue before the court is whether or not the plaintiff is sufficiently collateralized based upon the previously referred to security interest in the company whose sale generated these notes.
The fact that the issue was framed in this manner does not of course change the requirement that the burden is on the plaintiff to establish his right to a prejudgment remedy, Dow Condon Inc. v. Anderson, 203 Conn. 475, 479 (1987). If the requirements of due process are to be met, this would apply to the plaintiff's obvious burden of showing that there is probable cause to believe that it will prevail on its claim Ledgebrook Condominium Association Inc. v. Lusk Corporation,172 Conn. 577, 581 (1977) but also on the ancillary question raised by a case like this as to whether a plaintiff is already sufficiently collateralized.
Two recent cases define the context in which an issue like the one before the court should be resolved. The remedy of attaching and securing a defendant's property to satisfy a judgment was unknown to the common law so that a party seeking such remedies must strictly comply with statutes authorizing these procedures Ledgebrook Condominium Association Inc. v. Lusk Corp., supra at 582 et seq. Thus the court in Bank of New Haven v. Norman Sweedler et al, 8 CSCR 858 (1993) rightly said, citing Kaplan v. Ellis, 1 Conn. App. 368, 370 (1984). The purpose of a prejudgment remedy is to bring the defendant's assets into the law's custody to be held as security for any judgment the plaintiff may recover. That being the case:
 "Where that purpose has already been served by the existence of a lien security interest or mortgage interest, the granting of a prejudgment remedy CT Page 3721 attachment would not achieve the statutory purpose but would serve, instead, the unauthorized purpose of encumbering an excessive amount of the debtor's property." Id. at page 859.
As pointed out in Gateway Bank v. James McGuire,7 CSCR 1022 (1992) since a prejudgment remedy "effects a deprivation of use of property which has due process implications, . . . the creditor is not entitled to (a prejudgment remedy) in excess of the amount he is likely to recover" Id at page 1022. If Mr. Hems is sufficiently collaterized by the security agreement involved in this action he should not be entitled to a further attachment on the defendant's property.
The question is what is the value of the company here which is the subject of the security agreement. On this matter the defendants offered the testimony of Robert Carubia, a certified public accountant. Mr. Carubia has had extensive background, training and experience as evidenced by his resume submitted as defendant's exhibit 1. Carubia admitted on cross-examination that he had never "conducted an evaluation of a single-stockholder fire suppression installation and design system" and he couldn't remember how many corporations in which there had been only one stockholder that he'd valued. But he has been valuing closely held businesses for five to seven years and his training, education and professional work experience leave no doubt that he was fully competent to testify as an expert as to the value of this business.
When he testified Mr. Carubia said the value of the business was $208,000. His report was introduced wherein he estimated that the value of the business was "within the range of $200,000 to $220,000 at December 31, 1993." The date of the hearing was January 14, 1994. The court accepts the valuation of $208,000 he put on the business as that figure which Mr. Carubia estimates this business is worth. If that figure were found to be value of this business, the plaintiff's debt would be sufficiently collateralized and the plaintiff cannot prevail on his motion.
Mr. Carubia used the so-called capitalized earnings method to value this business. Under this method of valuation one takes the earnings, based on general accepted accounting principles, normalizes the earnings to standardize them and eliminate the individual judgments of an owner and then CT Page 3722 capitalizes those earnings at a capitalization rate which considers risk in the business venture. Carubia considered using an asset based approach but he concluded such an approach would not be an appropriate basis for valuation. The company was not asset based, driven by the earning power of its assets. It's a service-based company; the largest portion of its income comes from providing services. Therefore Carubia felt the capitalized earning method was the most appropriate means of determining the value of the business.
Apparently, an important consideration for Carubia was the nature of the customers of this company — this would have to be important for a service based business. Mr. Carubia, determined the company doesn't rely on a concentration of large customers whose loss would impact heavily on the company's earnings. The company relied on a large number of companies with small sales. Availability of the customer lists also helped Carubia verify the financial statements provided to him which he examined along with tax returns, examples of billings and customer service contracts and schedules of gross revenue. He also relied on information from Mr. Aloi regarding Financial information and as shall be discussed Aloi's representations regarding new business prospects resulting from changes in regulations. There is no indication an expert valuing a business would not rely on such information as part of normal valuation procedure.
Carubia in his report indicated the value he put on their business was meant to be a fair market value which is defined as the value agreed upon in an arms length way between a willing buyer and a willing seller. He felt the capitalized earnings method was an effective way to determine the value of a business because of the fact that it was based obviously on earnings. In response to a question from the court Carubia said earnings power is the predominant factor in motivating someone to invest in a business and the most important consideration in buying a business is its ability to earn money.
To calculate the value of the business on the method he used Carubia looked at the earning record of the business for the years 1991, 1992, and 1993. He then applied various factors to determine a capitalization rate and thereby arrived at his value for the business. CT Page 3723
The plaintiff sought to discredit Carubia's valuation. The plaintiff did not really question the figures as to the alleged earnings of the company over the years nor did he question the methodology or manner in which Mr. Carubia determined the capitalization rate.
The plaintiff rather attempted to show in broader terms that Mr. Carubia didn't take into account various factors which should have affected the value arrived at even though the capitalized earnings method was used.
In his report, Exhibit 2, Mr. Carubia said that in valuing closely-held businesses, various factors should be taken into account.
 Nature of the business and history of it since inception.
 General economic outlook and conditions and outlook in a specific industry.
 Book value of the stock and financial condition of the business.
Earnings capacity of the company.
Company's dividend paying record.
Goodwill or intangible value, if any.
 Previous sales of stock and the size of the block to be valued.
 Market value of actively traded stock of corporations engaged in the same or similar lines of business.
Carubia then said "although not all inclusive, the above factors present a cross section of the conditions that may impact the valuations."
The thrust of a major portion of the plaintiff's attack on Carubia's valuation of this company is that, having said these factors should be taken into account Carubia did not in fact take them into account when he put a value on the business. Attorney Hunt's cross-examination brought out this CT Page 3724 apparent discrepancy quite well.
However in the last analysis the court concludes that in his testimony Mr. Carubia explained either why all the factors mentioned in his report weren't used by him or why this did not affect the integrity of the value put on the business by the capitalized earnings method.
Carubia for example did not look at the company's dividend paying record because the company did not pay dividends. He did not take into account the book value of the stock. Since there had been no previous sales of stock by this business, this factor could not be weighed by Carubia in placing a value on the business. In fact Mr. Carubia gave a so-called marketability discount of 15% from the value of the business he arrived at by strict application of the capitalized earnings method. In his report he explained the discount was necessary because this business's stock is not publically [publicly] traded — the inability to easily convert the investment into cash dictates such a discount. Carubia explained how he determined the discount and the actual method he used was not specifically questioned by the plaintiff.
In his report Carubia mentioned another factor that should be taken into account in valuing closely-held businesses — one should work at the market value of actively traded stock of corporations engaged in the same or similar lines of business. Carubia explained his efforts to identify publically [publicly] traded companies similar to this company, Fire defense. He was unable to identify a company with such a narrow scope of business activity so that he could not apply that valuation method.
The difficulty with the plaintiff's emphasizing the inability of Carubia to take into account all these different types of valuation method is that he did not thereby show that the method actually used by Carubia — capitalized earnings — was thereby unreliable or invalidated. Mr. Carubia had an explanation for every different valuation method inquired about and why he could not use it so there was no indication these alternative methods of evaluation were not relied upon because they would have provided a lesser value to the business.
Also the plaintiff's cross-examination of Carubia CT Page 3725 explored the question of future economic outlook. That factor would certainly have a bearing on the validity of any value placed on a business by the capitalized earnings method of valuation which is really based on an estimation of an ability of a business to earn money.
This company provides fire protection systems and new construction has been declining in the northeast. Carubia pointed out that fire protection is required in all commercial buildings. Mr. Aloi also informed Carubia that new regulations were going into effect that would require the company to replace fire protection systems that would no longer be permitted. The plaintiff emphasized this information was produced by Mr. Aloi but there is no reason why experts can't rely on information from a small business operator in reaching their conclusions about business prospects in a particular industry. There can be no claim Carubia improperly relied on Mr. Aloi's information — much of the basis of his testimony was based on hearsay in any event and Carubia's qualifications are such and the nature of the valuation task he faced required such reliance, Vigliotti v. Compano, 104 Conn. 464 (1926), cf N.H. Savings Bank v. Valley Investors, 174 Conn. 77 (1977), see generally Handbook of Connecticut Evidence Tait and LaPlante, 7.16. 8(c), page 182 which discusses expert opinions based on hearsay, McCormick On Evidence, Vol I; 315 pp 62 et seq. footnote 5.
Also in another attempt to either question the earning potential of this business, the actual value placed on it by Carubia, or perhaps even the viability of the company, the plaintiff cross-examined Carubia about the importance of the fact that Aloi now rents from his wife. Assuming the rental markets have not collapsed, and no evidence of this was offered, why this should be an important factor in valuating a non asset based service company by the capitalized earnings method is not made clear by the plaintiff. In any event Carubia took the rental arrangement into account and assigned instead a "reasonable rent" for this expense — the determination of which the plaintiff didn't even explore let alone question.
Finally, the plaintiff makes much of the fact that denial of its motion for a prejudgment remedy would in effect force Mr. Hems to be an "indentured servant" — to enjoy the protection of the security interest offered by the mortgage on CT Page 3726 this business he in effect would have to run it to satisfy his judgment. This, however, is the security interest he bargained for when interestingly enough he sold this business four years ago for $209,000. There is no indication Aloi or Hems are the only people who could run this business and that provides the explanation as to how Carubia analyzed the significance or lack thereof in considering the "good will" factor in placing a value on this business.
The plaintiff points out that in the original sale of this business to Aloi in 1990 unlike a liquidation which would occur after judgment there was a covenant not to complete. But the written sales agreement of the parties at that time gave a value of only $2000 to the covenant. The plaintiff's comments on the looming importance of this factor are speculative, not based on cross examination or on its own expert testimony. The court has been presented with no information on the nature of the business's contractual relations with its customers and will not assume that the law of business torts and interference with contractual relations should somehow be suspended for the purposes of this analysis. The plaintiff's request for prejudgment remedy is denied.
Corradino, J.