STATE OF CONNECTICUT *v.* MAYNARD T. VASS
(11025)

PETERS, HEALEY, PARSKEY, SPONZO and COVELLO, Js.

Argued October 14—decision released December 20, 1983

*Aaron P. Slitt,* for the appellant (defendant).

*Katherine J. Lambert,* deputy assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Edward Spinella,* assistant state's attorney, for the appellee (state).

PETERS, J. The principal issue on this appeal from a conviction for sexual assault in the first degree and kidnapping in the second degree is the validity of the defendant's identification. The defendant, Maynard T. Vass, was charged by substitute information in two counts, sexual assault in the first degree, in violation of General Statutes § 53a-70 (a),[1] and kidnapping in the second degree, in violation of General Statutes § 53a-94 (a).[2] The jury returned verdicts of guilty on both counts, and the trial court rendered judgment in accordance with the verdicts. The defendant appeals from the judgment of conviction.

The jury might reasonably have found the following facts: The crimes occurred during the afternoon of

---

[1] "[General Statutes] Sec. 53a-70. SEXUAL ASSAULT IN THE FIRST DEGREE: CLASS B FELONY: ONE YEAR NOT SUSPENDABLE. (a) A person is guilty of sexual assault in the first degree when such person compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person."

[2] "[General Statutes] Sec. 53a-94. KIDNAPPING IN THE SECOND DEGREE: CLASS B FELONY. (a) A person is guilty of kidnapping in the second degree when he abducts another person."

Saturday, November 24, 1979, at a grocery store in Southington. The victim, an art student who worked at the store part-time, had just closed the store for the day. She had entered her car, intending to drive home, when the defendant knocked on the car window and asked her to re-open the store so that he could buy some cigarettes. Recognizing him as a customer who had been in the store earlier that afternoon, she agreed to his request. They entered the store, and the defendant purchased his package of cigarettes.

As the victim was again preparing to leave the store, the defendant put his arm around her neck and placed a knife under her chin. At knifepoint, he ordered her to lock the door, to go with him to the back of a small stockroom, and to undress. On the cement floor of the stockroom, he attempted vaginal intercourse and forced the victim to perform oral intercourse. He continued to threaten her with his knife, and slapped her for crying too loudly. He warned her that he would send three of his friends to see her if she reported the incident to anyone.

After further attempts at vaginal intercourse, the defendant ended his assault. Directing the victim to get dressed, he told her that he was a failure, and that he worried that he would not be able to see his children. He assured the victim that she was still a virgin. Upon leaving the store, he instructed the victim to wait there for five minutes and not to call the police. Shortly thereafter, the victim left the store and returned to her home. Visibly upset, she ran upstairs to her bedroom and subsequently told her parents of the attack.

That evening, the victim went with her father to the Southington Police Department to report the incident. At the police station, she gave a detailed description of her assailant's appearance, height and age, and

produced a drawing that she had made of him at home. A few days later, she also assisted in the preparation of a composite photograph.

While at the Southington Police Station the victim viewed approximately 100 photographs from the police files, but did not make an identification. During the week following the offense, she viewed several hundred more photographs at the neighboring police departments in Meriden and Bristol. On several occasions, as the investigation progressed, a Southington police officer brought additional photographs to the victim's house. At no time did she identify the perpetrator of the crime.

On December 8, 1979, two weeks after the offense, the Southington police officer returned to the victim's home with an array of six additional photographs. The victim examined each of the photographs individually. When she reached the defendant's photograph, she gasped and positively identified him as her assailant. At no time prior to trial was the victim asked to make an in-person identification of the defendant. She made an in-court identification at the trial.

On the basis of the victim's identification, the defendant was arrested in Florida. He had left Connecticut with his girl friend, Lynn Haynes, on Tuesday, November 27, 1979, three days after the assault on the victim. During the course of their trip to Florida, the defendant told Haynes that he was "in trouble," that he had picked up a girl and had unsuccessfully tried "to come on to her." Previously, the defendant had told Haynes that he was worried that if he stayed with her he might not be able to see his two children. Witnesses placed the defendant in the vicinity of the scene of the assault on the afternoon of November 24, 1979. At the trial, the defendant presented an alibi defense.

The defendant raises numerous claims of error on this appeal, which can fairly be grouped into four categories: (1) admission of the victim's photographic and in-court identifications of the defendant over his objection that the photographic array was unnecessarily suggestive and the identifications unreliable; (2) denial of the defendant's request for a mistrial so that his attorney could testify as a witness to impeach the credibility of Lynn Haynes; (3) denial of the defendant's requests to charge; and (4) various evidentiary rulings. We find no error.

## I

The defendant's first claim of error arises out of the pretrial photographic identification procedures employed by the state in this case. He argues that these procedures were so impermissibly suggestive that the admission at trial of the victim's in-court identification of the defendant and of testimony describing her previous identification of his photograph violated his right to due process of law.[3] We disagree.

A defendant who moves to suppress identification evidence bears the initial burden of proving that the identification resulted from unconstitutional procedures. *State* v. *McKnight,* 191 Conn. 564, 570, 469 A.2d 397 (1983); *State* v. *Kinsey,* 173 Conn. 344, 345–46, 377 A.2d 1095 (1977). Our cases have defined the relevant constitutional inquiry as follows. "[F]irst, it must be determined whether the identification procedure was unnecessarily suggestive; and second, if it is found to have been so, it must be determined whether the identification was nevertheless reliable based upon an examination of the 'totality of the circumstances.' " *State* v.

---

[3] Both the fourteenth amendment to the Constitution of the United States and article first, § 8, of the constitution of Connecticut guarantee the right of a criminal defendant not to be deprived of his liberty without due process of law.

*Doolittle,* 189 Conn. 183, 190, 455 A.2d 843 (1983), quoting *State* v. *Theriault,* 182 Conn. 366, 371–72, 438 A.2d 432 (1980). Further, we have stated that a conviction based upon an in-court eyewitness identification following a pretrial photographic identification will be set aside " ' "if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons* v. *United States,* 390 U.S. 377, 384, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968).' *State* v. *Anderson,* 178 Conn. 287, 291, 422 A.2d 323 (1979)." *State* v. *Doolittle,* supra. See also *State* v. *McKnight,* supra.

The defendant in this case argues that the photographic array from which the victim identified his picture was impermissibly suggestive for the following reasons: (1) the victim might have viewed the defendant's photograph at the Meriden Police Department and failed to identify it prior to her positive identification from the final array; (2) the six-picture final array contained three photographs of men approximately six feet tall when the victim had consistently described her assailant as between five feet seven and five feet nine inches tall; and (3) the defendant's height and weight, which were consistent with the victim's description, were visible on the back of his photograph. The defendant also argues that the identification was unreliable because the victim first described her assailant as approximately forty-five years old while the defendant was only thirty-two years old at the time of the offense. Further, he claims that the photographic identification was constitutionally suspect because of the state's failure to conduct any corroborative procedures such as a line-up, voice identification or seminal fluid analysis.

We reject as speculative the defendant's claim that the victim might have previously seen his picture when she viewed photograph files at the Meriden Police Department. Although we have recognized that the recurrence of a single photograph in more than one array may increase the likelihood of misidentification; *State* v. *Ledbetter,* 185 Conn. 607, 613, 441 A.2d 595 (1981); the defendant in this case has failed to prove any suggestive recurrence. The defendant testified that he had been arrested and photographed in Meriden, but offered no evidence that the photograph was in any of the files displayed to the victim or indeed that it had been retained by the Meriden police. The victim testified that she had not previously seen the photograph. The credibility of the witnesses on the motion to suppress was a question for the trial court. *State* v. *McKnight,* 191 Conn. 564, 571–72, 469 A.2d 397 (1983); *State* v. *Gold,* 180 Conn. 619, 647, 431 A.2d 501 (1980).

We find equally unpersuasive the defendant's claim that discrepancies in height between the defendant and several other members of the final array rendered the identification procedure suggestive. Four of the six photographs do have visible height calibrations next to the individuals pictured, indicating that three of those photographs depict men approximately six feet tall. The defendant's picture had no height scale on the front, although his height is written on the back of the photograph. At the hearing on the defendant's motion to suppress, however, the victim testified that the investigating officer did not comment as he handed her the six photographs, that she concentrated only on the faces, that she had never noticed the height scales until the defendant's attorney pointed them out to her on cross-examination, that she immediately identified the defendant's picture when she saw the face, and that

she did not look at the back of his photograph until after she made an identification, when the investigating officer asked her to initial the back of the photograph. The defendant's photograph, in these circumstances, was not so different from the other photographs as to telegraph a message to the victim that this was the person whom the police believed guilty. Compare *State* v. *Maturo,* 188 Conn. 591, 594–96, 452 A.2d 642 (1982) (four man lineup consisting of individuals found near crime scene not impermissibly suggestive where suspects of different heights and defendant only one with mustache), with *State* v. *Gold,* supra, 655 (photographic array impermissibly suggestive where defendant's picture the only one with mustache drawn on). The trial court therefore did not err in concluding that the defendant had failed to meet his threshold burden of proving the identification procedure impermissibly suggestive.[4]

The defendant's final claim, that the state's failure to conduct additional corroborative identification procedures vitiates the reliability of the positive photographic identification, is also without merit. The state has no constitutional duty to conduct a line-up, voice test, semen analysis or any other laboratory test. If the state has not employed unduly suggestive methods of identification, its only remaining duty is to prove beyond a reasonable doubt at trial that the identification is correct. "Absent constitutional barriers, so long as the

[4] Furthermore, even if the defendant had made an initial showing that the photographic array was unnecessarily suggestive, he could not suppress the identification if that identification met the constitutional test of reliability in the totality of the circumstances. The test of reliability requires the trial court to consider "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the [identification], and the length of time between the crime and the [identification]." *Neil* v. *Biggers,* 409 U.S. 188, 199, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972). See also *Manson* v. *Brathwaite,* 432

witness has identified the defendant with reasonable probability, whether the identification is the result of a photo display, a line-up, a show-up, or otherwise, the evidence is admissible." *State* v. *Ledbetter,* supra, 612. The defendant was, of course, free to argue to the jury that they should not trust the identification because other procedures which could have corroborated it were not employed. Such an argument, however, goes to the weight to be accorded the identification evidence and not to its admissibility.

## II

The defendant next claims that the trial court committed reversible error when it denied his motion for a mistrial in order to permit his attorney to testify as a witness. The purpose of defense counsel's proffered testimony was to impeach the credibility of Lynn Haynes. The defendant claimed that Haynes' testimony, as a witness for the state, differed materially from the statements that she had given to his attorney and to a private investigator hired by the defendant's attorney,[5] and that the inconsistencies in her statements could effectively be placed before the jury

U.S. 98, 114, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977); *State* v. *Theriault,* 182 Conn. 366, 373–74, 438 A.2d 432 (1980). In this case, the victim testified that she had seen her assailant as a customer at the store five or six times before the offense, including once in the afternoon only two or three hours before the crime. The offense took place in daylight over a period of approximately thirty minutes. The overall accuracy of the victim's description of her assailant is not fatally undermined by her mistaken estimate of his age. Prior to the positive photographic indentification, the victim had viewed several hundred photographs without ever identifying anyone other than the defendant as the perpetrator of the assault. The trial court committed no error in concluding that the circumstances of the identification contained sufficient indicia of reliability to pass constitutional muster.

[5] At trial, the witness testified that the defendant told her (1) that he wanted to go to Florida because he was in trouble, and (2) that he had picked up a girl and had tried to "come on to" her but had failed. Defense counsel offered to testify (1) that the witness had previously told him that the trip to Florida had been her idea; (2) that her previous story was that the defend-

only through the sworn testimony of defense counsel. Because the Code of Professional Responsibility does not permit an attorney to represent a client and to be a witness in the same case, the defendant contended that a mistrial was warranted.

The trial court denied the motion for a mistrial on the ground that the defendant had other avenues available to him to impeach the credibility of Lynn Haynes. The court held that the defendant's right to a fair trial could adequately be protected by permitting his attorney to cross-examine the witness as to her prior inconsistent statements, to present the testimony of the investigator, and to present the testimony of the defendant, himself, with respect to the content of the original conference between Haynes and defense counsel, at which the defendant had been present. The court also ruled that the defendant would be permitted to limit his own testimony solely to Haynes' alleged prior inconsistent statements, thus enabling him to limit any waiver of his privilege against self-incrimination.[6]

The issue before the trial court in considering a motion for mistrial is whether some event has occurred during trial causing such grave prejudice that the defendant can no longer receive a fair trial. *State* v. *Nowakowski,* 188 Conn. 620, 624, 452 A.2d 938 (1982); *State* v. *DeWitt,* 177 Conn. 637, 648, 419 A.2d 861 (1979). That issue is commended to the sound discretion of the trial court, and the narrow issue on appeal to this court is whether the trial court abused its discretion. *State* v. *Nowakowski,* supra. We find no such

ant had told her that he had picked up a *hitchhiker* and not merely a girl; and (3) that the witness had never mentioned any statement by the defendant that he was in trouble.

[6] The defendant did choose to testify in his own behalf at trial, and denied making certain of the statements that Haynes had attributed to him. He did not, however, testify with regard to any prior inconsistent statements made by Haynes in his attorney's office or elsewhere.

abuse in this case. The trial court carefully examined the possible means of impeaching the witness' testimony, and suggested alternatives to the defendant's attorney. Outside the presence of the jury, the court heard the testimony of Haynes and the defendant's investigator in order to satisfy itself that the defendant would have an adequate opportunity to bring Haynes' allegedly contradictory statements to the jury's attention. The cross-examination of Haynes and the testimony of the investigator elicited substantially the same impeachment as the proffered attorney's testimony. The defendant has failed to articulate any way in which the denial of his motion for mistrial deprived him of a fair trial. Accordingly, we find no error.

## III

The defendant next claims that the trial court erred in refusing his various requests to charge. The defendant requested charges concerning the relationship between kidnapping and rape, concerning alleged lesser included offenses, and concerning the state's failure to corroborate his photographic identification. We will consider these claims of error separately.

The defendant requested the court to charge the jury that he could not be convicted on the second count of the information, which charged him with kidnapping in the second degree, if the jury found that the kidnapping was "integral or incidental" to the crime of rape.[7] That is not the law in this state. This court has

[7] The defendant submitted the following request to charge: "The defendant is charged in the Second Count of this Information with Kidnapping in the Second Degree in violation of § 53a-70 of the General Statutes. The crime of sexual assault necessarily involved a restraint upon the person of the victim by the perpetrator. If you find that the restraint upon the victim was an integral or incidental act in order to accomplish the crime of Sexual Assault, you must find the defendant not guilty of the charge of Kidnapping. *State* v. *Dubina,* 164 Conn. 95 [99–100, 318 A.2d 95 (1972)], *State* v. *Johnson,* [185 Conn. 163, 177–78, 440 A.2d 858 (1981)]."

repeatedly held that if the state proves all of the elements of kidnapping, including the specific intent to restrain, beyond a reasonable doubt, the defendant may be convicted of kidnapping in addition to another felony, even though the two offenses arose out of the same conduct. *State* v. *Johnson,* 185 Conn. 163, 178, 440 A.2d 858 (1981), aff'd on other grounds, 460 U.S. 73, 103 S. Ct. 969, 74 L. Ed. 2d 823 (1983); *State* v. *Briggs,* 179 Conn. 328, 338–39, 426 A.2d 298 (1979); *State* v. *Chetcuti,* 173 Conn. 165, 170–71, 377 A.2d 263 (1977).

Contrary to the defendant's argument, the double jeopardy clause[8] does not prohibit separate convictions for kidnapping and rape arising out of the same transaction. Under the rule of *Blockburger* v. *United States,* 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932), a defendant may be convicted of two offenses arising out of the same criminal incident if each crime contains an element not found in the other. A person is guilty of kidnapping when he or she abducts another person. " 'Abduct' means to restrain a person with intent to prevent his liberation . . . ." A person is guilty of sexual assault in the first degree when he or she "compels another person to engage in sexual intercourse" by force or threat of force. General Statutes § 53a-70. One may commit rape without having the specific intent required by the kidnapping statute. As we said in *State* v. *Lee,* 177 Conn. 335, 344, 417 A.2d 354 (1979), "where the requisite intent is present, the fact that the perpetrator's underlying motive for the detention is the consummation of another crime . . . does not pre-

---

[8] The double jeopardy clause in the fifth amendment to the United States constitution applies to state prosecutions by virtue of the fourteenth amendment. *Benton* v. *Maryland,* 395 U.S. 784, 795, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969). Similar principles are found in the state law of this jurisdiction. See *State* v. *Flower,* 176 Conn. 224, 225–26, 405 A.2d 655 (1978).

clude a conviction for kidnapping."[9] We adhere to the settled rule of our cases and find no error in the trial court's denial of this request to charge.

The defendant next claims that the trial court erred in refusing his request to charge the jury on certain alleged lesser included offenses. He requested the court to instruct the jury on the elements of unlawful restraint as lesser included offenses of kidnapping in the second degree, and of sexual assault in the third degree as a lesser included offense of sexual assault in the first degree.[10] For differing reasons, none of these requests was appropriate in this case.

In *State* v. *Whistnant,* 179 Conn. 576, 588, 427 A.2d 414 (1980), this court articulated a four pronged test for determining when it is proper to charge a jury with respect to a lesser included offense. "A defendant is entitled to an instruction on a lesser offense if, and only if . . . (1) an appropriate instruction is requested

[9] The defendant's reliance on *State* v. *Dubina,* 164 Conn. 95, 100, 318 A.2d 95 (1972), is likewise misplaced. In *Dubina* we stated only that whether the defendant's crime "was essentially rape and not a 'true' kidnapping situation . . . would properly be a question for the jury to decide under appropriate instructions from the court." Id., 99–100. As our later cases make abundantly clear, the question for the jury to decide is not whether the kidnapping was incidental to the rape but whether the evidence of intent to restrain is sufficient to support convictions for the two distinct offenses arising out of a single act. See, e.g., *State* v. *Briggs,* 179 Conn. 328, 339, 426 A.2d 298 (1979).

[10] The defendant requested the following charges:

"If the court charges the jury with regard to Kidnapping in the Second Degree in accordance with § 53a-94 of the General Statutes, the defendant requests the court to further charge in accordance with § 53a-95 of the General Statutes and § 53a-96 of the General Statutes as lesser included offenses.

"If the Court charges the jury with regard to the crime of Sexual Assault in the First Degree, § 53a-70 of the General Statutes, the defendant further requests that the court charge the jury as to the crime of Sexual Assault in the Third Degree in accordance with General Statutes § 53a-72b as a lesser included offense."

by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser.''

The defendant's claim that he was entitled to a charge on unlawful restraint in the first degree; General Statutes § 53a-95;[11] cannot survive the second prong of the *Whistnant* test. The gravamen of unlawful restraint in the first degree is restraint of another person ''under circumstances which expose the latter to a substantial risk of injury.'' The gravamen of kidnapping is, however, abduction,[12] without regard to risk of injury. In the broad terms of the information with which this defendant was charged, it was possible to commit the greater offense of kidnapping without having first committed the lesser of unlawful restraint in

---

[11] ''[General Statutes] Sec. 53a-95. UNLAWFUL RESTRAINT IN THE FIRST DEGREE: CLASS D FELONY. (a) A person is guilty of unlawful restraint in the first degree when he restrains another person under circumstances which expose the latter to a substantial risk of physical injury.''

[12] ''[General Statutes] Sec. 53a-94. KIDNAPPING IN THE SECOND DEGREE: CLASS B FELONY. (a) A person is guilty of kidnapping in the second degree when he abducts another person.''

''[General Statutes] Sec. 53a-91. DEFINITIONS. The following definitions are applicable to this part:

''(1) 'Restrain' means to restrict a person's movements intentionally and unlawfully in such a manner as to interfere substantially with his liberty by moving him from one place to another, or by confining him either in the place where the restriction commences or in a place to which he has been moved, without consent. As used herein ''without consent'' means, but is not limited to, (a) deception and (b) any means whatever, including

the first degree.[13] For that reason, the defendant's requested charge was unwarranted. *State* v. *Mac-Farlane,* 188 Conn. 542, 547, 450 A.2d 374 (1982).

The defendant's claim that he was entitled to a charge of unlawful restraint in the second degree; General Statutes § 53a-96;[14] must also fail, but for another reason. Although its definition, restraint of another person, does fall within the ambit of the crime of kidnapping, the defendant has failed to satisfy the fourth prong of the *Whistnant* test. He has failed to demonstrate that the crucial element of intent, which differentiates kidnapping from unlawful restraint in the second degree, was sufficiently in dispute to justify an instruction on the lesser charge. The defendant offered no evidence whatsoever that would tend to suggest that whoever perpetrated the crime restrained the victim without the requisite intent to prevent her liberation by the use of force, threat of force or intimidation. Accordingly, the trial court's denial of the request was not error.

The defendant also claims that the trial court erred when it refused to charge the jury that they could convict him of sexual assault in the third degree, in violation of General Statutes § 53a-72a,[15] as a lesser included

---

acquiescence of the victim, if he is a child less than sixteen years old or an incompetent person and the parent, guardian or other person or institution having lawful control or custody of him has not acquiesced in the movement or confinement.

"(2) 'Abduct' means to restrain a person with intent to prevent his liberation by either (a) secreting or holding him in a place where he is not likely to be found or (b) using or threatening to use physical force or intimidation."

[13] The defendant never requested a bill of particulars.

[14] "[General Statutes] Sec. 53a-96. UNLAWFUL RESTRAINT IN THE SECOND DEGREE: CLASS A MISDEMEANOR. (a) A person is guilty of unlawful restraint in the second degree when he restrains another person."

[15] "[General Statutes] Sec. 53a-72a. SEXUAL ASSAULT IN THE THIRD DEGREE: CLASS D FELONY. (a) A person is guilty of sexual assault in the third degree when such person (1) compels another person to submit to sex-

offense of sexual assault in the first degree. This claim is without merit. In *State* v. *Martin,* 187 Conn. 216, 221, 445 A.2d 585 (1982), we recently held that where the information tracks the general statutory language, as it did in this case, sexual assault in the third degree is not a lesser included offense of sexual assault in the first degree, because it is possible to commit the greater offense without first committing the lesser. Sexual assault in the third degree differs from sexual assault in the first degree primarily in that it requires "sexual contact" rather than "sexual intercourse." Because "sexual intercourse", such as fellatio, may occur without "sexual contact", as that term is defined in our criminal statutes,[16] the second prong of the *Whistnant* test remains unsatisfied, and a charge on sexual assault in the third degree was unwarranted.

Further, the defendant claims reversible error in the trial court's denial of his requested instruction concerning the availability of identification procedures in addition to the photographic array conducted by the police in this case.[17] As discussed above, with respect to the admissibility of the identifications in this case, the state is under no affirmative duty to conduct every conceivable identification procedure. Contrary to the

ual contact (A) by the use of force against such other person or a third person, or (B) by the threat of use of force against such other person or against a third person, which reasonably causes such person to fear physical injury to such person or a third person, or (2) engages in sexual intercourse with another person whom such person knows to be related to such person within any of the degrees of kindred specified in section 46b-21."

[16] General Statutes § 53a-65 (3) provides: " 'Sexual contact' means any contact with the intimate parts of a person not married to the actor for the purpose of sexual gratification of the actor."

General Statutes § 53a-65 (8) provides: " 'Intimate parts' means the genital area, groin, anus, inner thighs, buttocks or breasts."

[17] The defendant submitted the following request to charge:

"The defendant in this action contends that the investigation in this case as conducted by the State was unfair and inadequate. The state had certain procedures available to it and failed to utilize them. Among these were

import of the defendant's request to charge, an identification is not inherently unfair because it was accomplished solely by means of a photographic array.

The trial judge meticulously instructed the jury to consider the reliability of the identification, and further instructed them that in order to convict the defendant they must be convinced beyond a reasonable doubt that the victim had accurately identified the defendant as her assailant. These instructions, whose adequacy the defendant has not challenged, were completely accurate and the defendant was entitled to no more.

The defendant is mistaken in his claim that the trial court had agreed to give, in addition, his proposed instruction on corroborative identification procedures. The trial court indeed suggested to defense counsel that the state's failure to conduct a line-up might be a subject for argument to the jury, and agreed *to consider* the propriety of a request to charge once the request was submitted. Upon consideration, the trial court evi-

the right to compel a line-up including the requirement that defendant exhibit himself along with others of similar appearance during which he would speak the words spoken to the victim and move about as directed. The witness is asked to identify an accused from among others during or at the conclusion of this procedure.

"Also available to the state was the procedure of testing seminal fluid or stains for blood typing. This is an identification process which, at times, can identify the blood type of an assailant. If the defendant's blood type was incompatible with that so determined, it would have been conclusive evidence that he was not the assailant. The defendant could have been required to provide a sample of his blood for testing.

"It is the contention of the defendant that basic fairness required that at least these available procedures be utilized and that these procedures are used to protect the innocent as well as to identify the guilty.

"The defendant, after his arrest, could also have been required to submit a voice exemplar. It is undisputed that none of these procedures were conducted. *State* v. *Wade,* 388 U.S. 218; *U.S.* v. *Dionisio,* 410 U.S. 1; *Schmerber* v. *California,* 384 U.S. 757; *Connecticut Practice Book* sections 776, 778."

dently concluded, as have we, that this request to charge was misleading and unwarranted. There was no error in the charge in this respect.

## IV

Finally, the defendant challenges several of the trial court's evidentiary rulings. These claims of error have not been properly presented, the defendant having failed to observe the requirements of Practice Book § 3060F (c) (3).[18] All of the claims involve allegations of abuse of the trial court's broad discretion to determine the relevance and admissibility of evidence at trial. *State* v. *Gold,* 180 Conn. 619, 646, 431 A.2d 501 (1980). In the absence of any demonstration that these evidentiary rulings constitute plain error, or that enforcement of our rule will cause injustice; Practice Book § 3164; we decline to consider these claims.

There is no error.

In this opinion the other judges concurred.

---

[18] Practice Book § 3060F (c) (3) provides in part:

"(3) When error is claimed in any other ruling in a court or jury case, the brief shall include, where appropriate: . . . the question or offer of exhibit; the objection and the ground on which it was based; the ground on which the evidence was claimed to be admissible; the answer, if any; the ruling; and any exception. When the basis of the ruling cannot be understood without a knowledge of the evidence or proceeding which preceded or followed the ruling, a brief narrative or verbatim statement of the evidence or proceeding should be made. A verbatim excerpt from the transcript should not be used if a narrative statement will suffice."