## State of Connecticut *v.* George W. Lee

Cotter, C. J., Loiselle, Bogdanski, Peters and Parskey, Js.

Argued January 9—decision released April 17, 1979

*Jerrold H. Barnett,* public defender, with whom, on the brief, were *Richard Emanuel* and *Vincent J. Giedraitis,* assistant public defenders, for the appellant (defendant).

*Robert M. Meyers,* assistant state's attorney, with whom, on the brief, was *George D. Stoughton,* state's attorney, for the appellee (state).

PARSKEY, J. After a trial to a jury the defendant was convicted of burglary in the third degree in violation of General Statutes § 53a-103a, robbery in the first degree in violation of § 53a-134 (a) (2), and kidnapping in the second degree in violation of §§ 53a-94 and 53a-91 (2) (b). The issues involved in this appeal are (1) whether the in-court identification of the defendant was constitutionally admissible, and (2) whether there was sufficient evidence to convict the defendant of the kidnapping charge.

On December 10, 1974, Frank Salamon was residing with his parents in a two-story, one-family home located in a rural area of Canton. About 11 a.m., as Salamon was awakening in his second floor bedroom, he heard a noise downstairs and the family dog barking. As he started downstairs he encountered a black male, whom he later identified as the defendant, coming up the stairs, who pulled out a pocketknife with a three- or four-inch blade, pointed it at Salamon, and ordered him to return to his bedroom. Salamon was directed to sit on the bed while the black male took things from drawers and cabinets and put them in a pillow case and, while he was in Salamon's bedroom, a white male wearing a scarf that covered the lower part of his face entered. Thereafter, the black male left the room and, about five minutes later, he returned and remained in the room for about another five minutes. While both intruders were together in the bedroom, the white male tied Salamon on the bed with a lamp cord, and a sheet was tied around his head,

so that he could not see. Thereafter the pair left, Salamon freed himself and immediately notified the police.

## I

The defendant assigns error in the court's failure to exclude Salamon's in-court identification of the defendant as the black male who accosted him on the stairway. His claim is that this identification was tainted by a previous out-of-court identification made under circumstances that violated his rights under the sixth and fourteenth amendments to the constitution of the United States. Certain additional facts are pertinent to this inquiry. After Salamon reported the incident, he gave a description of both the white and black males to Sergeants Stephen Cudworth and John LaDucer of the Canton police department. He described the white male as being five feet, ten inches in height, of medium build, having black hair of short length and wearing a scarf over his face. He described the black male as approximately six feet in height, of medium build, having black hair in a short Afro style and no facial hair. About an hour after the crime, Salamon was taken to Hartford police headquarters where he examined five mug shots of white males. Before he looked at the photographs he told Sergeant Cudworth that the white man who robbed him had a broad forehead with a high hairline. After he examined the photographs, Salamon picked out one of them, Paul DeWitt, as the white male who participated in the crimes. Salamon was also shown about two hundred photographs of black males but he could not identify any of them. Sergeant Cudworth did not ask the Hartford police department to segregate or identify the photographs of black males shown to Salamon, nor did he know whether the

defendant George Lee's photograph was among them. On January 28, 1975, the Canton police were notified by the state police that they had apprehended Paul DeWitt and a black male and that both were to be presented to the Court of Common Pleas in Middletown on January 29, 1975, for charges unrelated to the Canton incident.

Sergeant LaDucer telephoned Salamon, told him about DeWitt's arrest with a black male, and requested him to come to Middletown the next day to see if he could identify the black male in a line-up. Later the Canton police learned that a line-up could not be arranged. Upon learning that a line-up would not take place, Sergeant LaDucer decided he would locate the courtroom where DeWitt and Lee were and would ask Salamon if he could identify them. On January 29, 1975, Sergeant LaDucer and a detective from the Simsbury police department drove Salamon to the Court of Common Pleas in Middletown. While the police and Salamon were walking to the court liaison officer's room, they fortuitously encountered DeWitt and the defendant in the second-floor hallway. At the time, DeWitt and the defendant were handcuffed and were standing beside a state police officer. All of the people in the hallway at the time, other than the defendant, were white. After observing DeWitt and the defendant for about five to ten minutes, Salamon told Sergeant LaDucer that they were the pair who had been in his house. When he identified the defendant to Sergeant LaDucer, Salamon volunteered the information that the defendant had grown a beard since the date of the robbery.

The state represented to the court, at the hearing on the motion to suppress the hallway identification,

that during the trial it would not proffer it against either Lee or DeWitt. Because of this representation the trial court did not rule on the admissibility of this identification. It did conclude, however, that the state had established by clear and convincing evidence that Salamon's in-court identification of the defendant was based solely upon his observations and recollection of the defendant at the scene of the crime. The court also concluded that under the totality of the circumstances the in-court identification was not based upon the "corridor confrontation" or its fruits.

An in-court identification of an accused in the course of a trial is subject to challenge in any case where a pretrial corporeal identification has occurred without the presence of counsel at a critical stage of a criminal prosecution. This is so whether the pretrial identification is used to corroborate the in-court identification; *Gilbert* v. *California,* 388 U.S. 263, 87 S. Ct. 1951, 18 L. Ed. 2d 1178 (1967); or not. *United States* v. *Wade,* 388 U.S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 (1967). The in-court identification is subject to challenge regardless of whether the pretrial corporeal identification without the presence of counsel is in the form of a line-up, a show-up or a one-on-one identification. *Moore* v. *Illinois,* 434 U.S. 220, 98 S. Ct. 458, 54 L. Ed. 2d 424 (1977). The in-court identification may be challenged where the pretrial corporeal identification occurred "at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Kirby* v. *Illinois,* 406 U.S. 682, 689, 92 S. Ct. 1877, 32 L. Ed. 2d 411 (1972). To overcome the challenge,

the burden is on the state to establish by clear and convincing evidence that the in-court identification was based upon the witness' independent recollection. *United States* v. *Wade,* supra, 240; *State* v. *Middleton,* 170 Conn. 601, 609, 368 A.2d 66 (1976); *State* v. *Duffen,* 160 Conn. 77, 83, 273 A.2d 863, cert. denied, 402 U.S. 914, 91 S. Ct. 1397, 28 L. Ed. 2d 657 (1971). The factors to be considered by the trial court in evaluating the independent source of the witness' in-court identification include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Neil* v. *Biggers,* 409 U.S. 188, 199, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972).

For the state to meet its substantial burden of persuasion it must come forward with more than a bare preponderance of evidence. *Schneiderman* v. *United States,* 320 U.S. 118, 125, 63 S. Ct. 1333, 87 L. Ed. 1796 (1943). The evidence must be such as to induce in the mind of the trier "a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist." *Dacey* v. *Connecticut Bar Assn.,* 170 Conn. 520, 537, 368 A.2d 125 (1976); McCormick, Evidence (2d Ed.) § 340.

The trial court's conclusion that the state had established by clear and convincing evidence that Salamon's in-court identification was based on an independent recollection is amply supported by the

unchallenged finding.[1]  Salamon, who was wearing his eyeglasses at the time of the incident, had a good view of the defendant, both full face and profile, and watched him under well-lighted conditions, sometimes at a range of two to three feet, for about ten minutes.  Immediately after the robbery, Salamon gave the police a description of the defendant, and, except for the dispute about whether he was clean shaven, the defendant makes no claim that the description was otherwise inaccurate.  Less than two months later, when Salamon met Lee in the courthouse corridor, he observed, without being questioned, that Lee had grown a beard since the date of the robbery.  Some five months later Salamon identified the defendant in court at a preliminary hearing.  Salamon was absolutely positive at the time of the trial that the defendant and DeWitt were the two people who broke into his home.  Even if we assume, as does the state, that the "corridor confrontation" violated Lee's sixth amendment right to the presence of counsel under the rules enunciated in *Wade* and *Kirby,* there was a foundation in the evidence to support the conclusion that it was highly probable that Salamon's recollection of the defendant at the time of the trial was based on his observations at the time of the offense.

We need not dwell on the defendant's further claim that the "corridor confrontation" was so

[1] Although the defendant seeks to correct the finding, we conclude from an examination of the appendix that no additions or corrections are warranted.  Some of the requested additions are implicit in the finding.  *State* v. *Warren,* 169 Conn. 207, 214, 363 A.2d 91 (1975). Others are either disputed or not admitted or would not affect the result.  *Aillon* v. *State,* 168 Conn. 541, 542, 363 A.2d 49 (1975). Those findings sought to be deleted are substantially supported by the evidence printed in the appendix.

impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification. The short answer to this claim is that the trial court was satisfied under the totality of the circumstances that Salamon's in-court identification was reliable. *Manson* v. *Brathwaite,* 432 U.S. 98, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977). Having already determined that there was clear and convincing evidence that Salamon's in-court identification came from an independent source, the court could hardly have done otherwise.

## II

The defendant also asserts that there was insufficient evidence to support his conviction on the kidnapping charge. A person is guilty of kidnapping in the second degree under General Statutes § 53a-94 if he abducts another person. Section 53a-91 (2) defines "abduct" to mean "to restrain a person with intent to prevent his liberation by either (a) secreting or holding him in a place where he is not likely to be found, or (b) using or threatening to use physical force or intimidation." Section 53a-91 (1) defines "restrain" to mean "to restrict a person's movements intentionally and unlawfully in such a manner as to interfere substantially with his liberty by moving him from one place to another, or by confining him either in the place where the restriction commences or in a place to which he has been moved, without his consent." The defendant does not quarrel with the definitions, nor does he suggest that Salamon was not abducted within the literal meaning of that term as defined in the statute. Rather, he argues, citing *People* v. *Levy,* 15 N.Y.2d 159, 204 N.E.2d 842, cert. denied, 381 U.S. 938, 85

S. Ct. 1770, 14 L. Ed. 2d 701 (1965), and its progeny,[2] that where the restraint and asportation of the victim is incidental to the accomplishment of another substantive crime, the offense cannot be kidnapping as a matter of law.

We considered the defendant's argument in *State v. Dubina,* 164 Conn. 95, 318 A.2d 95 (1972), and observed (p. 100) that whether the detention[3] was merely incidental to another crime was, under appropriate instructions from the court, a question for the jury. In the present case, the trial court so charged the jury without a request. More recently, in *State v. Chetcuti,* 173 Conn. 165, 377 A.2d 263 (1977), we again reviewed the relationship of the kidnapping statute; § 53a-92 (a) (2) (A); to other associated crimes (assault and sexual contact). We there noted (p. 170) that the legislature had seen fit not to merge the offense of kidnapping with other felonies, nor to impose any time requirements for restraint, nor distance requirements for asportation, to constitute the crime of kidnapping.

Kidnapping requires that there be an abduction. Abduction means restraint with the intent to prevent liberation. Whether in a given case the restraint is accompanied by the requisite intent, so as to constitute kidnapping, or is merely incidental to another felony, is ordinarily a question for the jury. *State v. Chetcuti,* supra, 170; *State v. Dubina,*

---

[2] The relationship of kidnapping to other crimes is discussed in annot., 43 A.L.R.3d 699.

[3] In *State v. Dubina,* 164 Conn. 95, 318 A.2d 95 (1972), the kidnapping statute; General Statutes § 53-27 (repealed by Public Acts 1969, No. 828, § 214); made fraudulent or forcible restraint with intent to demand a concession or other valuable thing for the release of the victim a crime. We noted (p. 99) that restraint for sexual gratification has been considered within the purview of kidnapping statutes.

supra, 100. Where the requisite intent is present, the fact that the perpetrator's underlying motive for the detention is the consummation of another crime, the prevention of his detection, or the facilitation of his flight, does not preclude a conviction for kidnapping.

In this case, the facts—the movement of Salamon at the point of a knife from the stairway back to his bedroom, his detention in the bedroom for about fifteen minutes during the course of the robbery, and his being left lying on the bed in a prone position with a sheet covering his face and his hands tied behind his back so as to require an additional ten minutes for Salamon to extricate himself—were sufficient to permit the jury to find the restraint and intent necessary to constitute kidnapping in the second degree. We cannot say, as a matter of law, that the restraint was only incidental to the robbery.

There is no error.

In this opinion the other judges concurred.